PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH SIEFERT, | ) | |
| | ) | CASE NO. 4:22-CV-1453 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| LIBERTY TOWNSHIP, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 27] |

Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 27). The matter has been fully briefed. Having reviewed the record, the parties' briefs, and the applicable law, the Court grants Defendant's Motion for Summary Judgment.

**I. Background**

Plaintiff Keith Siefert commenced this Family and Medical Leave Act ("FMLA") and Ohio Civil Rights Act ("OCRA") action after Defendant Liberty Township terminated Plaintiff's employment on July 16, 2020. *See* ECF No. 3-1. Plaintiff, an at-will employee, worked for Defendant from January 20, 2009 to July 16, 2020 as a vehicle mechanic and maintenance technician. *See* ECF No. 26 at PageID #: 683, ¶ 1 (Joint Stipulations). During his tenure, Plaintiff was responsible for maintaining Defendant's police and fire department vehicles. *See* ECF No. 21-1 at PageID #: 493 (Keith Siefert Tr.).

On or about July 1, 2020, Liberty Township Police Captain Raymond Buhala instructed Plaintiff to install WatchGuard police dash camera components into four police vehicles ("WatchGuard Project"). ECF No. 26 at PageID #: 683, ¶ 3. Captain Buhala explained to Plaintiff

(4:22-CV-1453)

that the WatchGuard Project had a strict deadline of July 14, 2020, because a WatchGuard representative was scheduled to visit Liberty Township to install the software for the dash cameras later that week. ECF No. 26 at PageID #: 683, ¶ 4. Although Plaintiff lacked experience installing WatchGuard equipment into police cruisers, he told Captain Buhala that he believed he could complete the project by July 14, 2020. See ECF No. 26 at PageID #: 683, ¶ 4.

Captain Buhala and IT Specialist Joel Davis periodically checked in with Plaintiff on his WatchGuard Project progress between July 1 and July 14, 2020. See ECF No. 26 at PageID #: 683, ¶ 5. Plaintiff did not raise any concerns about meeting the WatchGuard Project deadline until Friday, July 10, 2020. See ECF No. 19-1 at PageID #: 136 (Raymond Buhala Tr.). Upon hearing Plaintiff's concern, Captain Buhala offered Plaintiff the opportunity to work overtime that weekend to ensure that the WatchGuard Project would be finished by Tuesday, July 14, 2020. See ECF No. 19-1 at PageID #: 136. Plaintiff declined Captain Buhala's offer and assured Captain Buhala that he would complete the WatchGuard Project on time. See ECF No. 19-1 at PageID #: 136.

On the evening of July 13, 2020, Plaintiff's wife, Tami Siefert, noticed that Plaintiff's behaviors seemed "a little bit off." See ECF No. 22-1 at PageID #: 539 (Tami Siefert Tr.). Prior to this day, neither Plaintiff nor Mrs. Siefert believed that Plaintiff was suffering from any medical issues. See ECF No. 21-1 at PageID #: 505; ECF No. 22-1 at PageID #: 541. It was only when Plaintiff did not respond to Mrs. Siefert while she was talking to him and when Plaintiff insisted on taking a bike ride at 9:00 p.m. that Mrs. Siefert became alarmed. See ECF No. 22-1 at PageID #: 541. As a result of Plaintiff's unusual behavior, Mrs. Siefert asked the fire department captain, Phil Lucarell, to monitor Plaintiff during the following workday. See ECF No. 21-1 at PageID #: 507. Because Captain Lucarell was not working on July 14, 2020, he asked Ron Simone, a

(4:22-CV-1453)

firefighter, to keep an eye on Plaintiff. See ECF No. 21-1 at PageID #: 508. Mr. Simone advised Captain Lucarell that Plaintiff appeared sad but otherwise "seemed okay." See ECF No. 21-1 at PageID #: 508.

On July 14, 2020, the WatchGuard Project deadline, Mr. Davis, the IT Specialist, checked in with Plaintiff to get a status update on the project. See ECF No. 24-1 at PageID #: 595 (Joel Davis Tr.). Initially, Mr. Davis thought that Plaintiff would timely complete the project. ECF No. 24-1 at PageID #: 595. Later in the afternoon of July 14, 2020, however, Mr. Davis took a closer look at the vehicles that Plaintiff was supposed to have worked on and realized that the hardware in two of those vehicles were not properly installed, necessarily delaying the WatchGuard representative's ability to complete software installation. See ECF No. 24-1 at PageID #: 595–96. When Mr. Davis informed Plaintiff of the identified issues, Plaintiff did not respond and, instead, scrolled through "classmates.com" on his work-issued computer. See ECF No. 24-1 at PageID #: 597. Mr. Davis then advised Captain Buhala that he observed Plaintiff browsing on "classmates.com" and that Plaintiff would not timely complete the WatchGuard Project. See ECF No. 19-1 at PageID #: 138.

When Plaintiff failed to arrive home from work around his usual time on July 14, 2020, Mrs. Siefert became concerned and drove to Liberty Township to check on Plaintiff. See ECF No. 26 at PageID #: 684, ¶ 8. Upon arriving at Plaintiff's workplace, Mrs. Siefert found Plaintiff in the garage working on one of the police cruisers and "noticed a few things were . . . odd" about Plaintiff's behavior. ECF No. 22-1 at PageID #: 540; see ECF No. 26 at PageID #: 684, ¶ 8. Sensing that Plaintiff may require medical attention, Mrs. Siefert attempted to coax Plaintiff to go home with her, but Plaintiff kept telling her that he needed to finish installing the antennae for the WatchGuard Project. See ECF No. 22-1 at PageID #: 540; see ECF No. 26 at PageID #: 684, ¶ 9.

3

(4:22-CV-1453)

Because of Plaintiff's unwillingness to leave, Mrs. Siefert took the police cruiser's keys and walked over to the nearby police department to ask a few police officers to help her get Plaintiff to leave with her. ECF No. 26 at PageID #: 684, ¶ 10. Several officers, including Officer James Marco and Captain Buhala, walked to the garage where Plaintiff was working. *See* ECF No. 26 at PageID #: 684, ¶ 10–11. When they arrived at the garage, they noticed that Plaintiff appeared agitated and kept flipping his pocketknife open and closed. *See* ECF No. 25-1 at PageID #: 628 (Liberty Township Police Department Investigative Report). Plaintiff then tossed his pocketknife against the wall. ECF No. 25-1 at PageID #: 628. Eventually, the police officers were able to persuade Plaintiff to get into Mrs. Siefert's car. *See* ECF No. 26 at PageID #: 684, ¶ 11. At one point, Plaintiff "exited the vehicle while it was moving." ECF No. 26 at PageID #: 684, ¶ 11. Because of Plaintiff's concerning behavior, one of the officers called for an ambulance to transport Plaintiff to the hospital. *See* ECF No. 26 at PageID #: 684, ¶ 12–13.

After Plaintiff had been transported to the hospital, Captain Buhala discovered that Plaintiff had worked on the wrong vehicle. ECF No. 26 at PageID #: 684, ¶ 15. Rather than only work on the assigned vehicles for the WatchGuard Project, Captain Buhala discovered that Plaintiff damaged a brand-new police cruiser by pulling out the console's wiring and drilling a three-fourths inch hole through the roof. ECF No. 19-1 at PageID #: 154. Captain Buhala then reviewed the internet history on Plaintiff's work-issued computer, confirming Mr. Davis's prior comment about Plaintiff scrolling on "classmates.com." ECF No. 19-1 at PageID #: 143–44; ECF No. 24-1 at PageID #: 598. The review of Plaintiff's internet history also revealed that Plaintiff had spent hours on his work-issued computer researching "guns sites, Facebook, and several other sites unrelated to his job description. The Internet history . . . revealed several days of none [*sic*] stop Internet use for personal business." ECF No. 25-1 at PageID #: 631.

4

(4:22-CV-1453)

On the evening of July 14, 2020, Captain Buhala contacted Township Trustee Greg Cizmar to inspect the damage to the brand-new police cruiser and to review Plaintiff's internet search history. ECF No. 26 at PageID #: 684, ¶ 15. Captain Buhala also went to Plaintiff's home to repurchase the gun he had sold to Plaintiff the day prior. ECF No. 26 at PageID #: 684, ¶ 16. Two days later, the Trustees held a public board meeting to discuss whether to discipline or dismiss Plaintiff. *See* ECF No. 26 at PageID #: 685, ¶ 17. Following the conclusion of the meeting, the board unanimously voted to terminate Plaintiff's employment. ECF No. 26 at PageID #: 685, ¶ 17. On July 16, 2020, Chief Meloro hand-delivered a termination notice to Plaintiff at the hospital where he was being treated. ECF No. 23-1 at PageID #: 561 (Toby Meloro Tr.); ECF No. 26 at PageID #: 685, ¶ 17.

Plaintiff brought this action claiming that Defendant violated his FMLA and OCRA rights when Defendant terminated Plaintiff without cause. *See* ECF No. 3-1. Defendant filed this Motion for Summary Judgment arguing that it had legitimate reasons for terminating Plaintiff. *See* ECF No. 27. Plaintiff contends that Defendant's termination reasons are merely pretextual, and, therefore, the Court should deny Defendant's Motion for Summary Judgment. *See* ECF No. 29.

**II. Standard of Review**

Federal Rule of Civil Procedure 56(a) instructs courts to grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "after adequate time for discovery and upon motion, [the Court will enter summary judgment] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit.

5

(4:22-CV-1453)

*Scott v. Harris*, 550 U.S. 372, 380 (2007). In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id*.

To survive summary judgment, "the non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. The non-moving party must go beyond the pleadings to designate specific facts found in the record that demonstrate genuine issues for trial, which may include affidavits, declarations, depositions, answers to interrogatories, or admissions on file. *Celotex Corp.*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(c)); *see also KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)).

(4:22-CV-1453)

## III. Discussion

### A. FMLA Claim

In Count One, Plaintiff claims that Defendant interfered with his FMLA rights by terminating his employment rather than allowing him to take medical leave. *See* ECF No. 3-1. The FMLA requires employers to provide up to twelve workweeks of leave during any twelve-month period when a qualifying employee experiences "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a).

Courts assess FMLA interference claims under the *McDonnell Douglas* burden-shifting framework. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* framework, Plaintiff must first establish all elements of his *prima facie* case. *Demyanovich*, 747 F.3d at 427. If Plaintiff succeeds in doing so, then the burden shifts to Defendant to show some "legitimate, nondiscriminatory reason" for its employment action. *Id.* Once Defendant meets its burden, the burden shifts back to Plaintiff to show that Defendant's articulated reason is merely pretextual. *Id.*

#### 1. Plaintiff Establishes a Prima Facie Case

To establish a *prima facie* case for FMLA interference, Plaintiff must show "(1) [he] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which

7

(4:22-CV-1453)

[he] was entitled." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 572 (6th Cir. 2023) (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)).

The parties agree that Plaintiff satisfied the first four elements of a FMLA *prima face* case, but they dispute whether Plaintiff established the fifth element. *See* ECF No. 27 at PageID #: 698–99; ECF No. 29 at PageID #: 969. Plaintiff argues that Defendant's termination of his employment interfered with his ability to exercise his FMLA rights. *See* ECF No. 29 at PageID #: 969. "[W]hen the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). "Failure to follow the notice requirements set forth in [§ 825.300] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). Rather than timely notify Plaintiff of his FMLA rights, Defendant opted to terminate Plaintiff two days after his medical emergency and while he was still hospitalized. *See* ECF No. 26 at PageID #: 685.

Defendant contends that it had no obligation to notify Plaintiff of his FMLA rights because its basis for terminating Plaintiff was unrelated to his serious health condition. *See* ECF No. 27 at PageID #: 699. Notwithstanding Defendant's rebuttal to Plaintiff's *prima facie* case—which is tantamount to Defendant's "legitimate, nondiscriminatory reason" for terminating Plaintiff—the Court finds that Plaintiff has sufficiently established a *prima facie* case against Defendant for interfering with his FMLA rights.

### 2. Defendant Proffers Legitimate, Nondiscriminatory Reasons for Termination

Because Plaintiff met his initial burden of establishing a *prima facie* case, the burden shifts to Defendant to show some "legitimate, nondiscriminatory reason" for the employment action

8

(4:22-CV-1453)

taken. *See Demyanovich*, 747 F.3d at 427. Although Plaintiff was not notified of his FMLA rights within five business days, Defendant's alleged interference with Plaintiff's FMLA rights "does not constitute a violation if [Defendant] has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 841 (6th Cir. 2012) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). In this case, Defendant asserts three legitimate, nondiscriminatory reasons for terminating Plaintiff: (1) Plaintiff failed to timely complete an important project; (2) Plaintiff spent an excessive amount of time on the internet during work hours; and (3) Plaintiff damaged a brand-new police vehicle. *See* ECF No. 27 at PageID #: 700. Each of Defendant's reasons are unrelated to Plaintiff's medical condition. Plaintiff neither disputes that Defendant articulated legitimate and nondiscriminatory reasons for terminating him nor argues that these reasons are related to his health. *See* ECF No. 29 at PageID #: 970. Accordingly, the Court finds that Defendant has met its burden of providing legitimate, nondiscriminatory reasons for terminating Plaintiff.

### 3. Plaintiff Asserts Defendant's Reasons Were Pretextual

Given Defendant's articulation of legitimate and nondiscriminatory reasons for terminating Plaintiff, the burden shifts to Plaintiff to show that Defendant's reasons were merely pretextual. *See Demyanovich*, 747 F.3d at 427. To properly refute Defendant's legitimate, nondiscriminatory reasons for termination, Plaintiff must offer evidence showing that Defendant's proffered reasons "had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." *Donald*, 667 F.3d at 762 (citing *Grace*, 521 F.3d at 670). Here, Plaintiff argues pretext under all three approaches. *See* ECF No. 29 at PageID #: 970–75.

9

(4:22-CV-1453)

### a. Factual Basis for Defendant's Reasons

Plaintiff first attempts to demonstrate the falsity of the factual basis for Defendant's legitimate, nondiscriminatory termination reasons. When analyzing the factual basis for an employer's proffered legitimate, nondiscriminatory reasons for termination, the Sixth Circuit "has adopted the 'honest belief rule.'" *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006). "Under the honest belief rule, an employer's proffered reason is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made." *Id.* (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)) (internal quotation marks and brackets omitted). Here, Defendant claims that it considered the following facts prior to terminating Plaintiff: (1) Plaintiff failed to complete the WatchGuard Project; (2) Plaintiff damaged an unassigned police car; and (3) Plaintiff spent extensive hours on non-work-related websites. *See* ECF No. 27 at PageID #: 703.

Because Defendant contends that it reasonably relied on such particularized facts, "the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns*, 166 F. App'x at 791). Plaintiff argues that Defendant's proffered reasons have no basis in fact because (1) completing the project was not possible on account of Plaintiff's medical emergency and the police cruiser that Plaintiff needed to work on was not present on the afternoon of July 14; (2) the damage that Plaintiff caused to the police cruiser was not intentional; and (3) Defendant has no internet usage policy that prevented Plaintiff from utilizing his work-issued computer for personal use. *See* ECF No. 29 at PageID #: 972–73.

10

(4:22-CV-1453)

Rather than prove that Defendant's reasons for termination never occurred or were based on false facts, Plaintiff attempts to justify his actions. Nevertheless, Plaintiff admits that he was instructed to complete the WatchGuard Project by July 14, 2020 but failed to do so. *See* ECF No. 26 at PageID #: 683, ¶ 4. Plaintiff also concedes that Trustee Cizmar went to the garage to inspect the police cruiser's damage and reviewed Plaintiff's internet history before conducting the board meeting that determined Plaintiff's future with the Township. *See* ECF No. 26 at PageID #: 684–85, ¶ 15, 17. Consequently, because Defendant's reasons for termination are properly supported by particularized facts, Plaintiff fails to meet its burden of showing that Defendant's proffered reasons for termination were not honestly held.

### b. Defendant's Motivation for Termination

Plaintiff can also survive summary judgment if he provides evidence showing that Defendant's proffered reasons "did not actually motivate the defendant's challenged conduct." *Grace*, 521 F.3d at 670. In other words, Plaintiff "must offer additional evidence of a causal connection sufficient to allow a reasonable jury to disbelieve Defendant's explanation for Plaintiff's termination." *Joostberns*, 166 F. App'x at, 796. Although "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence," "temporal proximity cannot be the sole basis for finding pretext" without additional, independent evidence. *Seeger*, 681 F.3d at 285 (quoting *Bell v. Prefix, Inc.*, 321 Fed.Appx. 423, 431 (6th Cir. 2009).

Plaintiff attempts to establish Defendant's illegal motivation by highlighting that he was notified of his termination within forty-eight hours after his medical emergency and while he was still hospitalized. *See* ECF No. 29 at PageID #: 974. Plaintiff couples the suspicious timing of his termination with the fact that his wife was informed that Defendant claimed to terminate Plaintiff upon belief that Plaintiff was "unsafe." *See* ECF No. 29 at PageID #: 974.

11

(4:22-CV-1453)

Although Defendant terminated Plaintiff within forty-eight hours after the medical emergency, Defendant's decision to terminate Plaintiff also occurred within forty-eight hours after discovering the three legitimate, nondiscriminatory reasons for the adverse employment action. *See* ECF No. 26 at PageID #: 684–85, ¶ 15, 17. It is reasonable for an employer to terminate an employee shortly after the discovery of his serious wrongdoings. *See Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 742 (6th Cir. 2015).

Plaintiff also argues that Defendant's belief that he was "unsafe" is an indication that Defendant's motivation for terminating him was unlawful. *See* ECF No. 29 at PageID #: 974. The combination of Plaintiff's excessive viewing of gun websites during work hours, his throwing of a pocketknife at the building, and his purchase of a gun just a few days before his termination justify Defendant's concern about workplace safety. *See* ECF No. 25-1 at PageID #: 628, 631; ECF No. 26 at PageID #: 684, ¶ 15–17. Thus, Defendant's perception of Plaintiff as "unsafe" stemmed from its reasonable concern for potential workplace violence, regardless of Plaintiff's medical condition.

Plaintiff fails to prove that Defendant's decision to terminate him were sparked by illegal motivations rather than by legitimate, nondiscriminatory reasons.

### c. Sufficiency of Defendant's Reasons for Justifying Termination

Plaintiff can also establish that Defendant's legitimate, nondiscriminatory reasons were pretextual by "pointing to Defendant's alleged disparate treatment of him in comparison to other employees." *Joostberns*, 166 F. App'x at 795. More specifically, Plaintiff "must show by a preponderance of the evidence that 'other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge.' " *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023

12

(4:22-CV-1453)

WL 3886405, at *7 (6th Cir. June 8, 2023) (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286-87 (6th Cir. 2012)). Here, Plaintiff only argues that union contracted officers have caused greater damage to vehicles than Plaintiff did, but they were not terminated. *See* ECF No. 29 at PageID #: 975. The vehicle damage, however, was not Defendant's primary motive for termination. Rather, it was Plaintiff's failure to "perform his duties" combined with his conducting of "personal business on work time" that drove Defendant's decision to terminate Plaintiff's employment. Additionally, Plaintiff fails to provide any evidence showing how Defendant treated other Township employees who failed to meet assignment deadlines or excessively used the internet at work for personal reasons.

Overall, Plaintiff fails to prove that Defendant's reasons for his termination were pretextual. Accordingly, the Court finds that Defendant did not interfere with Plaintiff's FMLA rights because Plaintiff has failed to meet his burden of showing that Defendant's proffered legitimate, nondiscriminatory reasons were pretextual. Therefore, the Court grants summary judgment on Count One in favor of Defendants.

### B. OCRA Claim

In Count Two of the Complaint, Plaintiff asserts that Defendant violated the OCRA by terminating him due to his disability. *See* ECF No. 3-1. To establish a *prima facie* case of disability discrimination under Ohio Rev. Code Ann. § 4112.02, Plaintiff must show that ""(1) that he [ ] was [disabled], (2) that an adverse employment action was taken by an employer, at least in part, because the individual was [disabled], and (3) that the person, though [disabled], can safely and substantially perform the essential functions of the job in question." *Most v. BWXT Nuclear Operations Grp., Inc.*, 743 F. App'x 664, 667 (6th Cir. 2018) (quoting *Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206 (1998)). "If a plaintiff can make a

13

(4:22-CV-1453)

prima facie case, the burden shifts to the employer to state a nondiscriminatory reason for the action in question." Most, 743 F. App'x at 667 (citing Proctor v. Ohio Civ. Rights Comm'n, 169 Ohio App.3d 527, 863 N.E.2d 1069, 1073 (2006)). "If the employer does so, the burden then shifts back to the plaintiff to demonstrate that the nondiscriminatory reason was mere pretext." Most, 743 F. App'x at 667.

To recover under the OCRA, Plaintiff must first establish that he has a disability pursuant to Ohio Rev. Code Ann. § 4112.01(A)(13). Ohio Rev. Code Ann. § 4112.01(A)(13) defines "disability" as:

> a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

Ohio Rev. Code Ann. § 4112.01(A)(13). Plaintiff asserts that he was disabled at the time of his termination because he was hospitalized for three days after suffering a mental breakdown, was diagnosed with delirium and acute psychosis, and Defendant perceived him as being disabled. See ECF No. 29 at PageID #: 976–77.

Although it is undisputed that Plaintiff was hospitalized for three days, Plaintiff provides no evidence that his mental impairments substantially limit his major life activities. See ECF No. 29 at PageID #: 977. Even if Plaintiff's major life activities were limited while he was in the hospital, there is no indication that such limitations were permanent or long-term especially given that Plaintiff was discharged from the hospital on July 17, 2020 and was permitted to return to

14

(4:22-CV-1453)

work beginning on July 29, 2020.[1]  ECF No. 27 at PageID #: 707; ECF No. 29 at PageID #: 977; see *Edwards v. Dialysis Clinic, Inc.*, 423 F. Supp. 2d 789, 797 (S.D. Ohio 2006) ("In determining whether an impairment is substantially limiting, the court should consider the nature and severity of the impairment, its duration or expected duration, and its permanent or long term impact."). Furthermore, "medical diagnoses alone are insufficient to support disability status." *McNeill v. Wayne Cnty.*, 300 F. App'x 358, 361 (6th Cir. 2008).[2]  Without evidence of substantial limitations on Plaintiff's major life activities, Plaintiff's medical diagnoses are insufficient to qualify him as disabled under the OCRA.

      Alternatively, Plaintiff claims that Defendant perceived him as disabled by determining that he was "unsafe," and therefore, he can still recover under the OCRA even if he did not have an actual or record of a disability.  See ECF No. 29 at PageID #: 976–77.  Plaintiff misstates Defendant's position.  Defendant regarded Plaintiff as "unsafe" not because of his medical condition, but because of workplace safety issues Defendant feared may result from Plaintiff's response to his termination, especially given his interest in guns and anger towards Defendant.  See ECF No. 30 at PageID #: 1001, 1007.  Based on the record, the Court finds that Plaintiff has not shown himself to have a "disability" as defined by Ohio Rev. Code Ann. § 4112.01(A)(13).

---

[1] Plaintiff was cleared by a doctor to return to work on July 29, 2020 with no restrictions.  See ECF No. 27 at PageID #: 707; *see also* ECF No. 29 at PageID #: 976 (agreeing that "Plaintiff was not released to return to work until July[]29th.").

[2] Although *McNeill v. Wayne Cnty.* is an ADA case, because "Ohio's disability discrimination law parallels the ADA in all relevant respects," it is appropriate to "apply the same analytical framework, using cases and regulations interpreting the ADA as guidance" when interpreting the OCRA." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

15

(4:22-CV-1453)

Plaintiff has not sufficiently established a *prima facie* case of disability discrimination under the OCRA. Nevertheless, even if Plaintiff had met his initial burden of establishing a *prima facie* case of disability discrimination, the Court maintains that Plaintiff's OCRA claim cannot survive as a matter of law because, as mentioned in the above analysis of Plaintiff's FMLA claim, Defendant provided legitimate, nondiscriminatory reasons for Plaintiff's termination and Plaintiff failed to show that Defendant's reasons are pretextual in nature.

Additionally, and perhaps more importantly, Defendant has argued, without meaningful rebuttal, that "[t]he issue is that [Plaintiff] was terminated for misconduct that occurred *prior* to his medical episode, and *prior* to any request for accommodation." ECF No. 30 at PageID #: 1008. (emphasis added); *see Yarberry*, 625 F. App'x at 742.[3]

Accordingly, the Court also grants summary judgment in favor of Defendant on Count Two.

### IV. Conclusion

Although Defendant was on notice of Plaintiff's medical condition at the time of Plaintiff's termination, Defendant "carried its burden of showing that its conduct-based reasons for termination were nondiscriminatory." *Yarberry*, 625 F. App'x at 742. Plaintiff failed to show that Defendant's reasons were pretextual; therefore, his FMLA and discrimination claims fail. For

---

[3] It bears mentioning that E.E.O.C. 2008 Guidance and Sixth Circuit case law suggest that where there has been employee misconduct—including nonviolent disruptive misconduct—the employer may terminate the employee for that behavior, even if it is related to his disability. *See* The Americans With Disabilities Act: Applying Performance and Conduct Standards To Employees With Disabilities, 2008 WL 4786697; *Yarberry*, 625 F. App'x at 742 ("[EEOC] Guidance specifies that '[i]f an employee states that her disability is the cause of the conduct problem or requests accommodation, the employer may still discipline the employee for the misconduct.'").

16

(4:22-CV-1453)

these reasons, the Court hereby grants Defendant's Motion for Summary Judgment ([ECF No. 27](#)). This matter is dismissed in its entirety. All upcoming case management and trial dates are vacated.

    IT IS SO ORDERED.

| | |
|---|---|
| July 31, 2023 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |